IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MULTIVAC, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14-1003-CV-W-ODS |
| ROTELLA'S ITALIAN BAKERY, INC., | ) |
| Defendant. | ) |

## ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS

Pending are Defendant's Motion for Summary Judgment (Doc. #44) and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Doc. 46). For the following reasons, both motions are denied.

## I. BACKGROUND

Plaintiff Multivac, Inc. ("Multivac") is a Kansas City, Missouri-based corporation that manufactures packaging machines used by food processors. Defendant Rotella's Italian Bakery, Inc. ("Rotella's") is a Nebraska-based wholesale bakery business that specializes in breads and rolls.

In late 2012 or early 2013, a regional sales manager for Multivac, Mark Snethen, contacted Rotella's inquiring about Rotella's operations in the gluten-free baking industry. During the phone call, Snethen represented that Multivac packaging machines succeeded in extending the shelf-life "up to six months to a year" for "two accounts" that packaged gluten-free bread. Rotella's expressed interest in purchasing a Multivac packaging machine for Rotella's gluten-free bread products. During the discussions between the two companies, Multivac represented that Rotella's could expect a shelf-life increase with Multivac's machine, and it could bypass using a freezer for its gluten-free products.

On October 18, 2013, Multivac sent a written proposal to Rotella's for the sale of a Multivac Packaging Machine Model R535 ("R535"). The R535 utilizes modified atmosphere packaging technology, removing air from the package and inserting a gas or gas mixture into the package and sealing the package. The proposal made representations about a "significant shelf life increase" as well as Rotella's ability to "get out of the freezer" and "maintain quality."

The parties entered into a contract for the purchase of the R535 for $560,964. The contract described the R535 as a "[f]ully automatic stainless steel horizontal Form, Fill and Seal rollstock packaging machine; custom designed and constructed for durability and reliability to maximize user efficiency and profitability." Doc. #45-3, at p. 5. The two-page, single-spaced Terms and Conditions included in the nineteen-page agreement contained the following pertinent language:

> **1. General**: (a) Notwithstanding any prior quotations, correspondence, conversations, agreements, purchase orders or similar instruments relative to the Goods, the Terms and Conditions of Sale and the Sales Agreement to which these Terms and Conditions are attached are the only terms and conditions applicable to the sale of the Goods….
>
> **6. Warranty**: (a) Except as otherwise stated herein, [Multivac] warrants the Goods to be free from defects in material and workmanship for a period of the lesser of 12 months after commencement of installation or 4,000 operational hours of the Goods; provided, however, that such period shall not exceed eighteen (18) months following transfer of title of the Goods (the "Warranty Period").… (b) The warranties set forth above are complete and are in lieu of and customer hereby waives, all other warranties, express or implied by statute, usage, custom of the trade or otherwise, including without limitation the implied warranties of merchantability and fitness for a particular purpose. (c) The liability of [Multivac] under its above warranty is expressly limited to the repair or replacement, at [Multivac's] sole option, of the Goods which breach the above warranty within the Warranty Period. [Multivac's] obligation to repair or replace defective Goods constitutes agreed and liquidated damages for any breach of warranty of [Multivac]….
>
> **9. Limitation of Liability**: [Multivac] shall not be liable to [Rotella's] under any warranty or otherwise for: (a) the quality, life, handling or other required specifications of the products that are packaged using the Goods….

**12. Governing Law**: These Terms and Conditions of Sale shall be governed by the laws of the State of Missouri….

Doc. #45-3, at pp. 22-23.

Prior to delivery of the R535, Multivac provided Rotella's with a loaner machine, the R140 model, that employed the same technology as the R535 in that it removed oxygen from a package and replaced it with another gas or gas mixture. Multivac loaned the R140 to allow Rotella's to perform shelf life testing and hit the ground running when the R535 arrived. Rotella's began testing the R140 and noticed the bread packaged by the R140 was accompanied by a foul odor within three to four days of being packaged, and mold appeared within two to three weeks of packaging.

Rotella's brought these issues to Multivac's attention. Multivac provided assistance to Rotella's to help find a gas, film, and product formula mixture that would assist Rotella's with the issues. The parties explored solutions to address the odor, which included experimenting with various gas mixtures and enlisting third-party contractors to help diagnose and solve the issues.

In May 2014, Rotella's sent an email to Multivac stating that although Rotella's would continue to cooperate with Multivac's efforts to successfully employ its vacuum-seal and packaging technology, it was becoming apparent to Rotella's, based upon the failures to that point, that Multivac's technology and packaging machines would not work on Rotella's gluten-free products. In June 2014, Rotella's advised Multivac that although the second payment on the R535 was due, Multivac had yet to demonstrate its vacuum-seal technology could work on Rotella's product without compromising it. In response, Multivac suggested that Rotella's change its gluten-free bread recipe, lower the packaging temperature, and change the gas mixture in the machine.

In July 2014, Rotella's sent another letter to Multivac requesting that Multivac (1) return Rotella's $186,350 deposit toward the purchase of the R535, or (2) provide assurances that Multivac's technology could work on Rotella's products, offering Multivac an additional thirty days to install the R535 and run test samples to prove the technology could work on Rotella's gluten-free products. In response, Multivac requested that Rotella's fulfill its contractual obligations by making its now-overdue

3

payments on the R535 and take delivery of the R535.  Thereafter, Multivac would provide reasonable assistance in the testing and operation of the machine.

The parties were unable to reach a solution, and in November 2014, Multivac filed this lawsuit alleging breach of contract.  Doc. #1.  In response, Rotella's asserted counterclaims against Multivac.  Doc. #7.  Multivac filed a motion for summary judgment on Rotella's Counterclaims.  Doc. #44.  Rotella's also filed a motion for summary judgment, asking that judgment be entered in Rotella's favor.  Doc. #46.  Neither party sought summary judgment on Multivac's breach of contract claim.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the… pleadings, but… by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

4

A. Rotella's Repudiation Counterclaim

*(1) Failure to State a Counterclaim*

Rotella's argues Multivac repudiated the contract, and it is entitled to summary judgment on this counterclaim. Multivac does not dispute that Rotella's alleged a counterclaim of repudiation. But Multivac argues Rotella's changed the underlying theory for its repudiation counterclaim during summary judgment. Multivac contends Rotella's alleged a counterclaim of repudiation based upon Multivac's failure to provide assurances that Multivac's machine would achieve a six to nine month shelf life. Doc. #49, at p. 22. Yet, according to Multivac, Rotella's seeks summary judgment on its repudiation claim related to the odor resulting from the gluten-free bread packaged with Multivac's machine. Multivac's argument turns on whether Rotella's properly pled a claim of repudiation, and if so, whether Multivac had notice of the ground(s) upon which the repudiation claim rested.

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Anticipatory repudiation occurs when a party to a contract repudiates that contract by manifesting, by words or conduct[,] a positive intention not to perform." *JAS Apartments, Inc. v. Naji*, 230 S.W.3d 354, 362 (Mo. Ct. App. 2007) (quoting *Jetz Serv. Co. v. Botros*, 91 S.W.3d 157, 163 (Mo. Ct. App. 2002)). Rotella's alleges, among other things, the following in support of its repudiation counterclaim:

- The "agreement imposed upon Multivac an obligation that Rotella's expectation of receiving Multivac's performance…would not be impaired." Doc. #7, at p. 12, ¶ 29.

- The demonstration machine provided by Multivac to Rotella's "repeatedly failed to properly vacuum seal Rotella's bakery products to achieve a shelf life of six (6) to nine (9) months." Doc. #7, at p. 12, ¶ 31

- "[T]he Demonstration Machine rendered Rotella's bakery products consistently **rancid** **and** **inedible** within only a few days of their having been packaged." Doc. #7, at p. 8, ¶ 9 (emphasis added).

- "[T]he Demonstration Machine never successfully vacuum sealed Rotella's bakery products as intended." Doc. #7, at p. 8, ¶ 10.

- Due to "multiple failed test results produced by Multivac's Demonstration Machine, and Multivac's inability to cure the problem over several months…, Rotella's had strong reservations about Multivac's ability to perform under the agreement…." Doc. #7, at p. 9, ¶ 13.

- "Because there existed reasonable grounds for insecurity with respect to Multivac's ability to perform under the Agreement…, Rotella's was justified in suspending its performance under the Agreement, and in demanding adequate assurances of performance from Multivac." Doc. #7, at p. 13, ¶ 33.

- On July 28, 2014, "Rotella's notified Multivac in writing that it was not willing to pay any additional amounts to Multivac until Multivac could prove that its vacuum seal packaging technology would perform consistent with the represented performance capabilities that Rotella's relied on…." Doc. #7, at pp. 8-9, ¶ 11; *see also* Doc. #7, at p. 13, ¶ 34.

- In the July 28, 2014 communication, "Rotella's informed Multivac that, upon assurances from Multivac that the R535 packaging machine would comply with the performance capabilities that Multivac represented to Rotella's when Rotella's ordered the machine, Rotella's would agree to give Multivac the opportunity to install the R535 packaging machine at Rotella's plant and prove, within a reasonable time, that the R535 was capable of performing consistent with the performance capabilities previously represented to Rotella's." Doc. #7, at p. 9, ¶ 15.[1]

- On August 20, 2014, Multivac sent a communication to Rotella's and "provided no assurances that the R535 packaging machine would comply with the

---

[1] This paragraph also specifically referred to the July 28, 2014 letter, which was attached to Defendant's Counterclaims. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). That letter states, among other things, that "utilizing Multivac's vacuum seal machine, our products have been found to be consistently **rancid** **and** **inedible** within a few days after having been packaged." Doc. #7-1, at p. 2 (emphasis added).

6

performance capabilities that Multivac represented to Rotella's when Rotella's ordered the machine." Doc. #7, at p. 10, ¶ 17.

- On October 20, 2014, "Rotella's…again requested that Multivac: provide reasonable assurances that the R535 packaging machine would work…and confirm whether Multivac would take the steps necessary to provide the R535 packaging machine would properly package Rotella's bakery products and extend their shelf life." Doc. #7, at p. 10, ¶ 18.

- Multivac responded on October 23, 2014, "but did not provide the assurances Rotella's requested. Multivac instead demanded that Rotella's pay the entire remaining amount of the purchase price…." Doc. #7, at p. 10, at ¶ 19.

- "By failing to provide adequate assurances of performance to Rotella's, despite Rotella's justified demand for such assurances, Multivac wrongfully repudiated the Agreement." Doc. #7, at p. 13, ¶ 37.

Based upon the allegations set forth by Rotella's counterclaims, the Court finds that Multivac was given fair notice that Rotella's asserted a counterclaim of repudiation. The Court also finds that Multivac was given fair notice that Rotella's counterclaim of repudiation was based upon its allegation that Multivac's machine could not properly package Rotella's bread. And although not required by Rule 8(a)(2) of the Federal Rules of Civil Procedure, which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," the Court also finds Multivac was on notice that Rotella's repudiation claims were based upon Multivac's failure to assure Rotella's that Multivac's machine would result in a six to nine months shelf life and would not result in a rancid odor.[2] Accordingly, the Court denies Multivac's argument that

---

[2] Even if the Court found that Rotella's failed to plead these particular bases for a claim of repudiation, the Court finds Rotella's properly set forth an affirmative defense of repudiation. That is, Rotella's alleged Multivac refused to provide adequate assurances to Rotella's regarding Multivac's packaging machines ability to "perform[] as represented," which constituted a wrongful anticipatory repudiation. Doc. #7, at p. 6, ¶¶ 4-5. "The rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." *Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 737 (8th Cir. 1997) (citation omitted). An affirmative defense "need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its *bare assertion.*" *Strauss v. Centennial Precious Metals, Inc.,* 291 F.R.D. 338, 341 (D. Neb. 2013) (quoting *Zotos v. Lindbergh Sch. Dist.,* 121 F.3d 356, 361 (8th Cir. 1997)).

7

Rotella's failed to state a counterclaim of repudiation based upon Multivac's alleged failure to assure Rotella's that its machine would not result in a rancid odor.

*(2) Analysis of Rotella's Repudiation Counterclaim*

Rotella's argues that it is entitled to summary judgment on its repudiation counterclaim. Multivac contends that all of Rotella's counterclaims, including its repudiation counterclaim, fail because the claims are based upon representations made prior to parties' execution of the contract, which Multivac maintains is fully integrated. Pertaining specifically to the repudiation counterclaim, Multivac argues the fully integrated contract does not set forth obligations that Multivac did not fulfill, and because the agreement is fully integrated, the Court should not be permitted to consider parol evidence establishing other obligations Multivac may or may not have had.

"A written agreement is integrated if it represents a final expression of one or more terms of the agreement." *Rosenfeld v. Boniske*, 445 S.W.3d 81, 87-88 (Mo. Ct. App. 2014), *reh'g and/or transfer denied* (Aug. 7, 2014), *transfer denied* (Oct. 28, 2014) (citation omitted). To determine whether a writing is integrated, the Court must look to the face of the document without considering the surrounding facts and circumstances. *Id.* (citation omitted). "If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties." *Id.* (citing *Jake C. Byers, Inc. v. J.B.C. Invs.,* 834 S.W.2d 806, 812 (Mo. Ct. App. 1992)).

"Merger clauses are express statements of the merger doctrine and are intended to prevent extrinsic evidence of other **agreements** influencing the interpretation of a final written contract…." *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 768 (Mo. banc 2013) (citations omitted) (emphasis added). Although the inclusion of a merger clause "does not establish that a writing is a complete and final agreement, a merger clause should be given great weight and aids the court in determining whether the writing is the final expression of all terms agreed upon." *Johnson*, 400 S.W.3d at 766 (citations omitted). "If the parties have integrated their agreement into a single written memorial, all prior **negotiations and agreements** in regard to the same subject

matter are excluded from consideration, whether they were oral or written." *Sedalia Mercantile Bank & Trust Co. v. Loges Farms, Inc.*, 740 S.W.2d 188, 193 (Mo. Ct. App. 1987) (citation omitted) (emphasis added); *see also Jake C. Byers, Inc.*, 834 S.W.2d at 811 (citation omitted).

The parties included a merger clause in the agreement. Doc. #45-3, at p. 22. But this is merely evidence that the parties intended all prior and contemporaneous agreements should have been merged into the contract. *See Rosenfield*, 445 S.W.3d at 88. The contract specifies that the R535 is supposed to "maximize user efficiency and profitability" and will be used to "package bread." Doc. #45-3, at 5. Without looking beyond the contract, Multivac cannot sincerely maintain it met its obligations under this contract in providing a machine that could "maximize user efficiency and profitability" when the machine it provided to Rotella's consistently resulted in bread that emitted a rancid odor after three days and mold growth after seven days.

Beyond this scant description of the R535, the contract does not set forth what exactly the R535 is supposed to do. Accordingly, this contract, on its fact, is not complete.[3] Therefore, the Court has considered evidence pertaining to representations made by Multivac to Rotella's about the capabilities and performance of the R535 before the contract was executed. The Court will also allow testimony at trial regarding what the R535 was supposed to do, including information and representations made by Multivac to Rotella's prior to the contract being executed.

The Court's review of the record reveals there are disputed issues of material fact that preclude entry of judgment as a matter of law with respect to Rotella's counterclaim of repudiation. At a minimum, there are disputed material facts pertaining to Multivac's obligations to Rotella's as well as the grounds and the reasonableness of those grounds for Rotella's insecurity regarding Multivac's performance. Accordingly, both parties' motions for summary judgment on this counterclaim are denied.

---

[3] Even if the Court were to find that the contract was complete, the parol evidence rule only prohibits evidence of prior negotiations and agreements when there is a fully integrated agreement. *Sedalia Mercantile Bank & Trust Co.*, 740 S.W.2d at 193. Therefore, representations made by Multivac to Rotella's regarding what the R535 would be admissible.

9

(B) Rotella's Breach of Warranty Counterclaims

*(1) Breach of Express Warranty*

As with the repudiation counterclaim, Multivac argues Rotella's failed to assert a counterclaim of breach of express warranty. While Rotella's did not set forth a counterclaim labeled as "breach of express warranty," it set forth several allegations that support a claim for breach of express warranty. To state a claim for breach of express warranty, a party must plead: (1) there was a sale of goods; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion. *Stefl v. Medtronic, Inc.*, 916 S.W.2d 879, 882-83 (Mo. Ct. App. 1996) (citation omitted).

Rotella's alleged that Multivac sold the R535 packaging machine to Rotella's, Multivac made representations to Rotella's about the quality of the R535, Rotella's relied upon Multivac's representations about the quality of the R535, the loaner machine given by Multivac to Rotella's did not work properly on Rotella's bakery products, Rotella's was injured by the loaner machine's inability to work properly on Rotella's bakery products, and Rotella's notified Multivac of this nonconformity. Doc. #7, at pp. 7-9. These allegations are sufficient to assert a counterclaim of breach of express warranty.

Contrary to the suggestion of Rule 10(b) of the Federal Rules of Civil Procedure, Rotella's failed to set forth this counterclaim as a "separate count," as it did with its repudiation counterclaim and breach of warranty of fitness counterclaim. Fed. R. Civ. P. 10(b) (stating "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense."). While it would have been preferable and clearer for Rotella's to separately set forth a count enumerated as breach of express warranty, the Court finds that Multivac was on notice that Rotella's alleged Multivac breached its express warranty.

10

Even if Rotella's failed to sufficiently plead a counterclaim of breach of express warranty, Rotella's set forth the following affirmative defense: "Plaintiff's claims are barred by Plaintiff's prior material breaches of warranty and contract." Doc. #7, at p. 6, ¶ 6. As set forth above, affirmative defenses must be articulated in "short and plain terms" and "need not be articulated with any rigorous specificity." *Wisland*, 119 F.3d at 737; *Zotos*, 121 F.3d at 361. Given the lesser standard required for affirmative defenses, the Court finds that Multivac was well aware that Rotella's was alleging breaches of warranty claims, including a breach of express warranty.[4]

Pursuant to Rule 8(c)(2) of the Federal Rules of Civil Procedure, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). The Court finds that justice requires treatment of Rotella's affirmative defense of breach of warranty as a counterclaim.

With regard to Rotella's allegation that Multivac breached its express warranty, Multivac contends any express warranty has been disclaimed in the contract, and therefore, Rotella's has waived any claim of breach of express warranty. Rotella's contends that Multivac cannot make affirmations of fact regarding the capabilities of the R535 and then shield itself from those affirmations with the warranty disclaimer clause in the contract. Rotella's argues that Multivac was obligated under the contract to provide a machine that worked as Multivac had represented to Rotella's. The Court agrees and concludes there are disputed issues of material fact that preclude entry of judgment as a matter of law with respect to this counterclaim (or affirmative defense). In particular, there are disputed issues of material fact regarding the reconciliation of the express warranty(ies) made by Multivac with the disclaimer clause. Thus, both parties' motions for summary judgment are denied with regard to this counterclaim (affirmative defense).

---

[4] The Court notes that Multivac inquired about the warranty provision contained in the parties' agreement during depositions, leading the Court to believe that Multivac knew full well that Rotella's alleged a breach of express warranty.

11

### *(2) Breach of Implied Warranty of Merchantability*

Rotella's alleges that Multivac breached the implied warranty of merchantability by delivering a machine incapable of properly packaging Rotella's bread. Multivac first argues Rotella's failed to sufficiently plead this counterclaim.

Section 400.2-314 of the Missouri Revised Statutes creates an implied warranty of merchantability, which includes an implied warranty that the goods sold "are fit for the ordinary purpose for which such goods are used." Mo. Rev. Stat. § 400.2-314; *see also Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989). To recover under the provisions of section 400.2-314, a party must prove (1) a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the buyer, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury. *Ragland Mills*, 763 S.W.2d at 360 (citation omitted). The same analysis and allegations set forth *supra*, section II(B)(1), apply here.

Rotella's set forth sufficient allegations to set forth a counterclaim of breach of implied warranty of merchantability, many of those allegations appear within Rotella's Count I of its Counterclaims. While Rotella's failed to set forth a separate counterclaim designated as breach of implied warranty of merchantability, it set forth an affirmative defense of "breaches of warranty." The Court finds that justice requires that, to the extent Rotella's did not sufficiently plead a counterclaim of breach of implied warranty of merchantability, Rotella's affirmative defense of breaches of warranty be construed as a counterclaim of breach of implied warranty of merchantability.

With regard to Rotella's allegation that Multivac breached the implied warranty of merchantability, Multivac contends that Rotella's waived such a claim when it signed the contract, which purportedly disclaimed such warranties. "[T]o exclude or modify the implied warranty of merchantability…the language must mention merchantability and in case of a writing must be conspicuous…." Mo. Rev. Stat. § 400.2-316. "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it… Language…is 'conspicuous' if it is in larger or other contrasting type or color." Mo. Rev. Stat. § 400.1-201(10).

Based upon the record before it, the Court finds the disclaimer of warranties in this contract was not "conspicuous" in that it did not meet the requirements of the Missouri statutes. The disclaimer neither appears in larger font nor is in a contrasting type or color.

The Court concludes there are disputed issues of material fact that preclude entry of judgment as a matter of law with respect to this counterclaim (or affirmative defense), particularly with regard to whether Multivac breached the implied warranty of merchantability. Therefore, both parties' motions for summary judgment with regard to this counterclaim (affirmative defense) are denied.

### *(3) Breach of Implied Warranty of Fitness*

Rotella's final counterclaim is breach of implied warranty of fitness. Multivac does not dispute that Rotella's properly pleaded such a counterclaim. Multivac argues, as it did with regard to Rotella's counterclaim of breach of implied warranty of merchantability, that this counterclaim has been disclaimed. The analysis set forth above applies here. Similarly, the Court finds that there are disputed issues of material fact precluding entry of judgment as a matter of law with respect to this counterclaim, specifically regarding whether Multivac breached the implied warranty of fitness. Both parties' motions for summary judgment with regard to this counterclaim are denied.

### III. CONCLUSION

The parties' Motions for Summary Judgment are denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 10, 2016   UNITED STATES DISTRICT COURT