# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MULTIVAC, INC., | ) |
|         Plaintiff, | ) ) ) |
| vs. | )   CASE NO. 4:14-CV-01003-ODS |
| ROTELLA'S ITALIAN BAKERY, INC., | ) ) ) |
|         Defendant. | ) |

### DEFENDANT ROTELLA'S ITALIAN BAKERY, INC.'S RESPONSES AND SUGGESTIONS IN OPPOSITION TO PLAINTIFF MULTIVAC'S MOTIONS IN LIMINE

Defendant, Rotella's Italian Bakery, Inc. ("Rotella's") by and through counsel and in response to Plaintiff Multivac, Inc.'s ("Multivac") proposed Motions in Limine, states as follows:

**Response to Multivac's Motion in Limine #1 (Court Filing No. 55):**

Multivac requests an Order prohibiting Rotella's from introducing evidence that Multivac is a German, or foreign-based company. (ECF No. 55). Rotella's does not dispute that Multivac is a Delaware corporation with its principal place of business in Kansas City, Missouri. However, to the extent this proposed Order would preclude *any* evidence concerning the manufacture of the Multivac Model R535 Machine (the "R535") in Germany, including a reference to Multivac's principle corporation headquartered in Germany to ascertain whether any prospective members of the jury are affiliated with, investors in, or have previously worked for that corporation, such a request is overbroad.

Multivac processed Rotella's order and sent specific instructions to its German-based manufacturing plant to build the R535. The manufacturing, shipping, and storage costs associated with the R535 are at the crux of Multivac's claims for damages. Rotella's believes that Multivac intends to introduce testimony from its witnesses that the R535 machine was the product of

specialized manufacturing that occurred in Germany. To the extent Multivac intends to argue at trial that the R535 was the subject of specialized manufacturing in Germany, Rotella's should not be precluded from introducing evidence to explain that any manufacturing or assembly in Germany occurred because Multivac is a multinational corporation, and its manufacturing facilities are located in Germany. Implicit in the calculation of Multivac's claimed damages is the fact that the machine was manufactured overseas and shipped to the United States. If such evidence is considered irrelevant or prejudicial, then Multivac should be precluded from introducing evidence of its shipping costs, or that the machine was manufactured in Germany.

In addition, to establish the relevant timeline of events, it is necessary for Rotella's to introduce evidence that the R535 was manufactured internationally. One key reason that Multivac provided Rotella's with the replica R140 "prototype" machine was to help Rotella's perform shelf-life testing during the interim period between the finalization of the parties' agreement and arrival of the R535 at Rotella's plant in Nebraska. Rotella's cannot establish this timeline if it is precluded from showing the jury that the machine was built in Germany and shipped to the United States. Finally, Multivac has placed at issue the fact that the R535 was manufactured in Germany by designating portions of John Rotella's deposition testimony, in which John Rotella was specifically asked about whether he knew if the R535 was manufactured in Germany. (ECF No. 58, p. 1, citing John Rotella's deposition at 87:15-88:8).

Rotella's respectfully requests that the Court deny Multivac's Motion in Limine #1 insofar as it would preclude evidence explaining why the R535 at issue was manufactured in Germany and shipped to the United States.

2

**Response to Multivac's Motion in Limine #2 (Court Filing No. 56):**

Multivac requests an Order prohibiting Rotella's from introducing evidence regarding prior "unrelated acts" or "character evidence" involving Mark Snethen, the Multivac sales representative who facilitated the transaction with Rotella's. (ECF No. 56). Specifically, Multivac seeks to exclude an entire email between Greg Poffenbarger (Multivac Director of Sales, Western Region) and Lou Klemp (Multivac Director of Sales, Midwest Region) regarding "technical mistakes" made by Snethen on the Rotella's project. In the email, Mr. Poffenbarger writes as follows:

> Thanks Lou. Not good. I'll query Mark a bit more about this (I don't recall making any promises on shelf life expectations) but I want to be careful not to get him fully involved at this point.
>
> If there's anything you need from our side, let me know. Sounds like it's getting a bit messy and I don't want to saddle you and Nathan with having to clean it up if you know what I mean. **There were a lot of technical mistakes made by Mark on the front end on this one. Just want to make sure he didn't oversell it too.** Don't think he did though after the butt chewing he got from me on the other mistakes.

(ECF No. 56-1, MV0000724) (emphasis added).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Craig Outdoor Adver., Inc. v. Viacom Outdoor*, *Inc.,* 528 F.3d 1001, 1014 (8th Cir. 2008) (citing Fed. R. Evid. 401). "A district court is afforded wide latitude in determining issues of relevancy." *Id*. (citations omitted). A central issue in this case is whether Multivac failed to adhere to its own representations made at the outset of the transaction. Hence, an internal email referencing "a lot of technical mistakes" made by Multivac's lead salesman "on the front end on

3

this one" and "oversell[ing]" the machine could scarcely be more relevant.[1] The jury can determine the weight this email should be afforded, but its relevance is not in question.

Multivac erroneously submits that this email is "irrelevant to Rotella's affirmative defenses and counterclaims" because Rotella's has not asserted a defense or counterclaim based on "technical mistakes" involving the R535. (ECF No. 56, p. 3). This flawed and remarkably narrow argument ignores that a document's relevance is not predicated upon whether the litigant's initial pleading references the specific phrase (i.e., "technical mistakes") contained in the document. Indeed, such reference would have been impossible in this instance, as this internal email was only produced by Multivac in discovery, which obviously occurred *after* the pleading stage. This email is not "irrelevant to Rotella's affirmative defenses and counterclaims," as Multivac assets, but fundamental to them.

Rotella's has asserted defenses and counterclaims for repudiation and breach of express and implied warranties. As this Court has correctly noted, "The rules do not require a party to plead every step of legal reasoning that may be raised in support of its affirmative defense; they only require a defendant to state in short and plain terms its defenses to a plaintiff's claims." (ECF No. 52, Order and Opinion, p. 7, n. 2 (citing *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997)). This internal email was produced *by* Multivac *to* Rotella's during discovery. There is simply no requirement that upon receiving this document, Rotella's hurriedly amend its pleadings and specifically include the "technical mistakes" language in order to rely on the document at trial. Rather, Rotella's properly alleged that Multivac failed to satisfy implied

---

[1] Multivac neglects to mention in its Motion that the email from Poffenbarger to Klemp, which it hopes to exclude, was in response to an email sent by Klemp to Poffenbarger, dated the same day, in which Klemp attached notes from a conversation between Multivac Salesman Nathan Forbes and Rotella's. These notes reflect that the parties specifically discussed shelf-life promises and expectations, which are key issues in this case. (ECF No. 56-1, MV0000725).

4

warranties and failed to comply with its own express warranties made at the outset of the transaction. An internal Multivac email referencing (1) "a lot of technical mistakes"; (2) made "on the front end on this one"; (3) by the Multivac representative who sold the machine, easily supports and falls within the ambit of Rotella's theories of the case.

Multivac argues that deposition testimony from the email recipient, Lou Klemp, supports the purported lack of relevance because Klemp never discussed "technical mistakes" with Poffenbarger and believes that "technical mistakes" referred to technical changes in the machine. (ECF No. 56-2, 116:20-117:7). Mr. Klemp's subjective and speculative belief as to what Mr. Poffenbarger meant by "technical mistakes" made by Snethen "on the front end on this one" do not decide the threshold question of relevance.

> Q. Well, he's talking about in one sentence technical mistakes, which you talked about with the web and the [advance]-- And in the next sentence he's saying he just wants to make sure he didn't oversell it, too. Did you have any discussions with Mr. Poffenbarger about Mr. Snethen overselling the R535?
>
> A. As far as any specific discussions with him, I asked him to go back to his sales guy when I first inherited the project just to make sure everything was clear in his mind what was sold. That's it.
>
> ***
>
> So, you know, again, I'm inheriting what I'm inheriting and I have to go through it.
>
> Q. So you don't know whether Mr. Poffenbarger was referring to Mr. Snethen's overselling or over -- overselling expectations of shelf life, for example?
>
> A. No.

(ECF No. 56-2, 117:18-118:12). The document is not rendered irrelevant simply because Klemp cannot state with any clarity what Poffenbarger meant by his reference to "technical mistakes" "on

5

the front end" or "oversell[ing]." The jury is free to consider Klemp's testimony in discerning the particular weight to afford this email, but it is a relevant, admissible document.

To the extent Multivac attempts to argue the "other mistakes" language qualifies as inadmissible character evidence under Fed. R. Evid. 404(a)(1), Klemp's testimony provides no indication whatsoever that "other mistakes" was in reference to this transaction with Rotella's or mistakes on other projects. As such, Rotella's is entitled to at least elicit testimony regarding the meaning of "other mistakes." Multivac cannot exclude the entire email solely because of the vagueness of one particular statement made by its own personnel. Multivac's Motion in Limine #2 should be denied in its entirety.

While the entire email should be admissible, if the Court decides that the following language is inadmissible: "Don't think he did though after the butt chewing he got from me on the other mistakes," Rotella's respectfully requests that this portion of the email be redacted and the rest of the document allowed to be offered into evidence.

**Response to Multivac's Motion in Limine #3 (Court Filing No. 57):**

Multivac requests an Order prohibiting Rotella's from introducing any parol evidence regarding the Contract, its terms, or the negotiations thereof. (ECF No. 57). This Court has already considered this issue and determined that the Contract between the parties is neither complete nor fully integrated. (ECF No. 52, Order and Opinion, p. 8-9). Accordingly, the parol evidence rule does not exclude representations made by Multivac:

> The Court will also allow testimony at trial regarding what the R535 was supposed to do, including information and representations made by Multivac to Rotella's prior to the contract being executed.

(Id.). Because this Court has already reasoned that Multivac's pre-contractual representations and warranties are not barred by the parol evidence rule, Multivac's Motion #3 should be denied.

6

The parol evidence rule only applies to complete agreements. *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 479 (Mo. Ct. App. 2005) (citations omitted). If a writing omits an essential term, it is considered incomplete and extrinsic evidence may be introduced to establish the parties' intent. *Id*. The parol evidence rule does not exclude proof that an alleged contract omits a fundamental assumption upon which the agreement is made. *Id*. In addition, express warranties are not excluded by the parol evidence rule because they are part of the contract itself. *Miller v. Andy Burger Motors, Inc.,* 370 S.W.2d 654, 658 (Mo. Ct. App. 1963); *A. Franck-Philipson & Co. v. Hanna & Young Handle Co.*, 200 S.W. 718, 721 (Mo. Ct. App. 1918).

Here, the parol evidence rule does not exclude Multivac's express warranties and affirmations of fact—whether in writing or made orally—concerning the basic performance capabilities of the R535. These express warranties were fundamental assumptions that induced Rotella's to enter the transaction and formed the basis of the parties' bargain. Rotella's respectfully requests that the Court deny Multivac's Motion in Limine #3 in its entirety.

Respectfully submitted,

MILLER SCHIRGER, LLC

BY: /s/Matthew W. Lytle
John J. Schirger MO Bar #60583
Matthew W. Lytle MO Bar #59145
4520 Main Street, Suite 1750
Kansas City, MO 64111
Telephone: (816) 561 - 6500
Facsimile: (816) 561 - 6501
jschirger@millerschirger.com
mlytle@millerschirger.com

7

-And-

Paul M. Shotkoski *pro hac vice*
David P. Kennison *pro hac vice*
FRASER STRYKER PC LLO
500 Energy Plaza
409 S. 17th Street
Omaha, NE 68102
Telephone: (402) 341-6000
Facsimile: (402) 341-8920
pshotkoski@fraserstryker.com
dkennison@fraserstryker.com

ATTORNEYS FOR DEFENDANT
ROTELLA'S ITALIAN BAKERY, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Michael Hargens (Michael.Hargens@huschblackwell.com)
Kyle Kitson (Kyle.Kitson@huschblackwell.com)
Husch Blackwell, LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112

ATTORNEYS FOR PLAINTIFF

/s/ Matthew W. Lytle
Attorney for Defendant